## S92A1111, S92X1112. RED & BLACK PUBLISHING COMPANY, INC. et al. v. BOARD OF REGENTS et al.; and vice versa.

(427 SE2d 257)

Hunt, Presiding Justice.

The Red & Black, the student newspaper of the University of Georgia,[1] brought this action for injunctive relief against the Board of Regents, Charles Knapp as President of the University of Georgia and others,[2] seeking access to records and disciplinary proceedings of the student Organization Court of the University of Georgia.[3] The trial court held the newspaper had a right of access to the records under the Open Records Act, OCGA § 50-18-70 et seq., but not to the proceedings under the Open Meetings Act, OCGA § 50-14-1 et seq. The trial court also granted defendant Knapp's motion that he be dismissed as a party. Both sides appeal. We affirm the trial court's ruling allowing access to the Organization Court's records; however, we reverse the trial court's order regarding the Organization Court's proceedings because we conclude those proceedings are subject to the Open Meetings Act. We also reverse the trial court's dismissal of President Knapp as a defendant.

1. *The Organization Court*

To determine whether the Organization Court is subject to the Open Records and Open Meetings Acts, we look first to the nature of that court and its relationship to the Board of Regents and the University of Georgia.

As noted by the trial court, the Board of Regents and its universities are state agencies or bodies for purposes of Georgia's Open Records and Meetings laws. *Board of Regents v. Atlanta Journal*, 259 Ga. 214 (1) (378 SE2d 305) (1989); see also *Dooley v. Davidson*, 260 Ga. 577 (397 SE2d 922) (1990); *McLarty v. Bd. of Regents*, 231 Ga. 22 (200 SE2d 117) (1973). The Board of Regents governs the University of Georgia and delegates to the University the formulation of rules and regulations concerning the discipline of students and student social organizations. The University created the Office of Judicial Programs to handle discipline of students and student social organizations.[4] That office provides "training for the [student] justices, to aid in the administration of the courts, and to coordinate the future de-

---

[1] Also named as a plaintiff is Jennifer Squillante, the Editor-in-Chief of the Red & Black.

[2] The named defendants are the Board of Regents of the University System of Georgia, Charles Knapp, in his capacity as President of the University of Georgia, and William B. Bracewell, in his capacity as Director of the Office of Judicial Programs of the University of Georgia.

[3] The suit was instigated after the newspaper was denied access to Organization Court records and proceedings involving hazing charges against two fraternities.

[4] Rules of Procedure & Regulations of the Student Judiciary.

velopment of judicial bodies and hearing boards on campus."

The Student Judiciary hears and adjudicates alleged violations of University rules and regulations.[5] The Student Judiciary is divided into five different student courts: Traffic Court, Campus Court, Main Court, Pharmacy Court, and Organization Court. Students serve as justices on the courts, and court sessions are held on the University of Georgia campus. Staff of the Office of Judicial Programs (employees of the University) provide secretarial and administrative support for the student courts. All student records are housed in the Office of Judicial Programs.

The Organization Court hears and adjudicates cases involving alleged University rule and regulation violations on the part of fraternities and sororities.[6] Five student justices of the Organization Court must be present for that court to hold a hearing and to determine the appropriate disciplinary measures, with three votes necessary to find a defendant organization guilty. Hearings of the Organization Court are closed to the public at the request of the defendant organization.

Specific University regulations pertaining to student organizations include prohibitions against: damage to property, disorderly conduct, alcohol and drug misuse, unauthorized entry, gambling, and hazing. The Organization Court, if it determines a student organization regulation has been violated, may impose the following sanctions: recommendation for charter revocation; revocation of University registration; suspension; restriction; probation; oral reprimand; written reprimand; and community service. The Organization Court "may enlarge upon or modify this list to meet the particular circumstance in any case."[7] Fraternities and sororities are subject to the jurisdiction of the Office of Judicial Programs and the Organization Court throughout the year.

2. *The Open Records Act*

Georgia's Open Records Act defines "public records," in pertinent part, as:

all documents, papers, letters, maps, books, tapes, photographs, computer based or generated information, or similar

---

[5] Rule 3 of the Rules of Procedure and Regulations of the Student Judiciary provides: The courts of the Student Judiciary function in order to establish the facts of a case, determine whether a University Regulation has been violated, and, if the student-defendant is found guilty to assess an appropriate penalty for each violation. . . .

[6] Rule 9 of the Rules of Procedure and Regulations of the Student Judiciary provides: Organization Court has jurisdiction over all cases which are assigned to it by the Office of Judicial Programs. Such jurisdiction shall extend to any offenses which may result in revocation, probated revocation, suspension, or probated suspension of the organization's registration with Student Activities. . . .

[7] University of Georgia Conduct Regulations and Procedures to be Followed in Disciplinary Hearings, Student Organization regulations.

material prepared and maintained or received in the course of the operation of a public office or agency. "Public records" shall also mean such items received or maintained by a private person or entity on behalf of a public office or agency which are not otherwise subject to protection from disclosure.

OCGA § 50-18-70 (a). The purpose of the Act

is not only to encourage public access to such information [so] . . . the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions, but also to foster confidence in government through openness to the public.

*Athens Observer v. Anderson*, 245 Ga. 63, 66 (263 SE2d 128) (1980). The defendants concede, as they must, that the records of the Organization Court are "public records" that, unless exempted, are subject to inspection by the general public under the Open Records Act. *Board of Regents v. Atlanta Journal*, supra; *Macon Telegraph Pub. Co. v. Bd. of Regents*, 256 Ga. 443 (350 SE2d 23) (1986). However, they contend that the records are specifically exempted by virtue of OCGA § 50-18-72 (a) which provides that public disclosure is not required for records:

(1) Specifically required by the federal government to be confidential;

(2) Medical or veterinary records and similar files, the disclosure of which would be an invasion of personal privacy.

The defendants argue that both the above exemptions are triggered by the federal Family Educational Rights and Privacy Act, 20 USC § 1232g, commonly known as the "Buckley Amendment."[8] We disa-

---

[8] The Buckley Amendment provides, in pertinent part:
(b) (1) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information . . .) of students without the written consent of their parents to any individual, agency, or organization. . . . 20 USC § 1232g (b) (1).

\* \* \*

(b) (2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection un-

gree.

First, we have serious questions whether the Buckley Amendment even applies to the exemptions argued by the defendants since the Buckley Amendment does not prohibit disclosure of records. Rather, as noted by the trial court, the Buckley Amendment provides for the withholding of federal funds for institutions that have a policy or practice of permitting the release of educational records. *Student Bar Assn. Bd. of Governors v. Byrd*, 239 SE2d 415, 419 (N.C. 1977); *Tombrello v. USX Corp.*, 763 FSupp. 541, 545-546 (N.D. Ala. 1991); *Bauer v. Kincaid*, 759 FSupp. 575, 589 (W.D. Mo. 1991). Also, we look to the Buckley Amendment's purpose, which was not to grant individual students the right of privacy or access to educational records, but to control the careless release of educational information on the part of many institutions. Id. at 590; *Smith v. Duquesne University*, 612 FSupp. 72, 80 (W.D. Pa. 1985).

However, assuming, without deciding, that the threat of withdrawal of federal funding is equivalent to a prohibition of disclosure (as the defendants argue), we do not believe the documents sought are "education records" within the meaning of the Buckley Amendment.[9] The documents at issue involve charges of violations of University rules and regulations — specifically, in this case, hazing charges — against social fraternities. While the records in question are similar to, they are not the same as, those "maintained solely for law enforcement purposes," which are expressly excluded from the Buckley Amendment's purview. See *Bauer v. Kincaid*, supra. Never-

---

less . . .

* * *

(B) Such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency. 20 USC § 1232g (b) (2) (B).

[9] "Education records" are defined in the Buckley Amendment as:

(4) (A) Except as may be provided otherwise in subparagraph (B), those records, files, documents, and other material which

(i) contain information directly related to a student; and

(ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.

(B) The term "education records" does not include

(i) records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute;

(ii) if the personnel of a law enforcement unit do not have access to education records under subsection (b) (1) of this section, the records and documents of such law enforcement unit which (I) are kept apart from records described in subparagraph (A), (II) are maintained solely for law enforcement purposes, and (III) are not made available to persons other than law enforcement officials of the same jurisdiction; . . . 20 USC § 1232g (a) (4) (B).

theless, the records are not of the type the Buckley Amendment is intended to protect, i.e., those relating to individual student academic performance, financial aid, or scholastic probation.[10] Id. at 591. Further, as noted by the trial court, the Organization Court records are maintained at the Office of Judicial Programs, while "education records" are maintained at the Registrar's Office.

Moreover, the Buckley Amendment specifically provides that the sanction of loss of federal funding does not occur when the institution furnishes information in compliance with a judicial order. 20 USC § 1232g (b) (2) (B), fn. 8, supra; *State v. Birdsall*, 568 P2d 1094, 1097 (Ariz. 1977); *Rios v. Read*, 73 F.R.D. 589, 598 (E.D. N.Y. 1977). Thus, because the trial court ordered the records released, the Buckley Amendment cannot trigger either of the exemptions argued by the defendants.

For the foregoing reasons, we conclude the trial court correctly determined the Organization Court records to be subject to the Georgia Open Records Act.

3. *The Open Meetings Act*

The Georgia Open Meetings Act ("Government in Sunshine Law") provides that "all meetings . . . shall be open to the public," OCGA § 50-14-1 (b), and applies to "[e]very state department, agency, board, bureau, commission, and authority." OCGA § 50-14-1 (a) (1) (A). "Meetings" are defined under the Act as

> the gathering of a quorum of the members of the governing body of an agency or of any committee of its members created by such governing body . . . at a designated time and place at which official business or policy of the agency is to be discussed or at which official action is to be taken. . . .

OCGA § 50-14-1 (a) (2).

The Act was

> enacted in the public interest to protect the public — both individuals and the public generally — from "closed door" politics and the potential abuse of individuals and the misuse of power such policies entail.

*Atlanta Journal v. Hill*, 257 Ga. 398, 399 (359 SE2d 913) (1987). We have held that "the Act must be broadly construed to effect its remedial and protective purposes." Id.

---

[10] The trial court in this instance conducted an in camera review of the documents regarding the hazing charges, and specifically found nothing related to the academic settings, such as grades, test and aptitude scores or financial aid. Indeed, one hazing charge involved an alleged battery against a student which had been investigated by the local police.

By the Act's express language, the test for its applicability is two-pronged: first, is the meeting one of a "governing body of an agency" or any committee thereof?; and second, is the meeting one "at which official business or policy of the agency is to be discussed or at which official action is to be taken[?]"

(a) It cannot seriously be contended that the Organization Court does not meet the second prong of the test. That is, it meets to take official action on behalf of the University and the Board of Regents. As noted above, the Organization Court exists and derives its authority to enforce University rules and regulations concerning social fraternities and sororities directly from the Board of Regents. The Board of Regents delegated to the University the formulation of rules and regulations regarding discipline of students and student social organizations. The University, in turn, created the Office of Judicial Programs to handle discipline of students and student organizations. The Organization Court has jurisdiction over all cases assigned to it by the Office of Judicial Programs. Its sessions are held on the University of Georgia campus, it is funded by University funds, and it is served administratively by staff members of the Office of Judicial Programs, University employees. The Organization Court's very function is to determine whether a social fraternity or sorority is guilty of violating University rules and regulations. Indeed, it adjudicates claims of serious misconduct, some of which constitute criminal activity under state law.[11] The Organization Court's decisions and sentences are not advisory in any sense, compare *McLarty v. Bd. of Regents*, supra, but are final and binding unless reversed on appeal.[12]

(b) The defendants contend, and the trial court held, that the Organization Court is not a "governing body of an agency" or any committee of the members thereof within the meaning of the Act. It

---

[11] E.g., damage to property, theft, alcohol and drug misuse, unauthorized entry, and hazing. See OCGA § 16-5-61. In fact, the trial court found that one of the hazing charges in this case involved an alleged battery against a student which had been investigated by the local police.

The court is run by formal procedural rules, similar to those of trial courts, including: the right to counsel for the defendant, filing of pleadings, notice of hearings, presentation of witnesses under oath, right of cross-examination, burdens of proof (the defendant is presumed innocent and must be proven guilty by clear and convincing evidence), and appeals. Student justices are subject to a code of ethics consisting of ten canons.

The Organization Court's hearings are quite similar to those in criminal cases. We note our state's strong policy against secret criminal trials. Indeed, our constitution *requires* that criminal trials be public. Constitution of Ga. 1983, Art. I, Sec. I, Par. XI. See also *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576 (292 SE2d 815) (1982).

[12] A defendant organization may appeal an Organization Court decision first to the Student Judicial Council, which is made up of seven students, then to the vice-president for Student Affairs, then to the president of the university, and finally, to the Board of Regents (the last level of appeal is a matter of discretionary review). In fact, witnesses for the state indicated that very few Organization Court decisions are appealed.

is true that the Organization Court does not fit within the literal language of the Act in that it is not a committee of any members of the governing body, i.e., the Board of Regents or the University. Nevertheless, the Organization Court stands in the place of, and is equivalent to the Board of Regents and the University under the Open Meetings Act. The Organization Court, acting with the Office of Judicial Programs, is the *vehicle* by which the University carries out its responsibility, as directed by the Board of Regents, to regulate social organizations.[13] Simply put, having delegated official responsibility and authority to the Organization Court, the defendants cannot hide behind meetings at which official action is taken on their behalf, and for which they are responsible, by contending that a group of students, none of whom are members of the Board of Regents, is taking that action.

We are mindful that openness in sensitive proceedings is sometimes unpleasant, difficult, and occasionally harmful. Nevertheless, the policy of this state is that the public's business must be open, not only to protect against potential abuse, but also to maintain the public's confidence in its officials. *Athens Observer v. Anderson,* supra.[14]

For the foregoing reasons, we hold that the trial court erred in concluding that the hearings of the Organization Court are not subject to the Open Meetings Act and can be held in secret.[15]

4. *President Knapp*

We agree with the plaintiffs that the trial court erred in dismissing President Knapp as a defendant. He is the executive head of the University of Georgia and its departments. By virtue of that position, and because of the Board of Regents' mandate that the University formulate rules and regulations pertaining to students and student social organizations, President Knapp necessarily is responsible for procedures involving those rules and regulations. Accordingly, he is a proper party defendant. See *Macon Telegraph Pub. Co. v. Bd. of Regents,* supra, 256 Ga. at 445.

*Judgment affirmed in Case No. S92X1112. Judgment reversed in Case No. S92A1111. Clarke, C. J., Fletcher, Sears-Collins, Hunstein, JJ., and Judge Michael Stoddard concur; Benham, J., concurs*

---

[13] The Organization Court is far different from most of the student groups on campus, e.g., glee clubs, language clubs, etc. The University would be unlikely to take any action if any of these groups disbanded. However, if the Organization Court were to abdicate its powers for any reason, the University would be *required* to step in to establish another method to regulate social organizations.

[14] In fact, there may be legitimate reasons for closing Organization Court hearings to the public. However, the authority for this, or any other exception to the Open Meetings Act must come from the General Assembly.

[15] The plaintiffs do not seek access to the deliberations of the Organization Court justices, which, of course, would not be open to the public, any more than would jury deliberations.

*in the judgment only.*

DECIDED MARCH 15, 1993.

*Federal, Goetz & Cronkright, R. Keegan Federal, Jr., Morris, Manning & Martin, Anthony E. DiResta, George E. Hibbs,* for appellants.

*Michael J. Bowers, Attorney General, Alfred L. Evans, Jr., Senior Assistant Attorney General,* for appellees.

*Dow, Lohnes & Albertson, Peter C. Canfield, James A. Demetry,* amicus curiae.