# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 15, 2001 Session

## JOY MCVEY PORTER v. MONEY TREE FINANCE CORPORATION II, LLC D/B/A CASH EXPRESS, II

### Appeal from the Chancery Court for Washington County
### No. 33648    Jean A. Stanley, Judge

### FILED NOVEMBER 28, 2001

### No. E-2001-01142-COA-R3-CV

---

The plaintiff, Joy McVey Porter, entered into a loan agreement – referred to as a title pledge agreement – with the defendant, Money Tree Finance Corporation II, LLC d/b/a Cash Express, II ("Money Tree"). The agreement contains an arbitration provision wherein the parties agree to arbitrate all disputes "arising out of" the agreement. Pursuant to the agreement, Money Tree loaned Porter $500 in exchange for the title to her automobile. When Porter defaulted, Money Tree sold her vehicle and attempted to collect the loan deficiency remaining after the sale. Money Tree's efforts prompted Porter to file this suit alleging that Money Tree's collection efforts violated the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.* Porter also alleges that Money Tree violated the Federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, by failing to provide an accurate statement of all financing charges in the body of the agreement. Money Tree moved the court to require arbitration. The trial court held that Porter was not required to submit her claims to arbitration because, according to the lower court, those claims do not "aris[e] out of" the agreement. Money Tree appeals pursuant to T.C.A. § 29-5-319(a)(1).[1] We reverse.

### Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded

CHARLES D. SUSANO, JR., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Michael A. Eastridge, Johnson City, Tennessee, for the appellant, Money Tree Finance Corporation II, LLC, d/b/a, Cash Express, II.

---

[1]T.C.A. § 29-5-319 (2000) provides in pertinent part,

> (a) An appeal may be taken from:
> (1) An order denying an application to compel arbitration made under § 29-5-303....

William L. Francisco and Eric D. Miller, Johnson City, Tennessee, for the appellee, Joy McVey Porter.

**OPINION**

I.

Porter and Money Tree entered into a title pledge agreement ("the agreement"), a contract governed by the Tennessee Title Pledge Act, T.C.A. § 45-15-101, *et seq.* (2000), pursuant to which Money Tree loaned Porter $500. As security for the loan, Porter pledged the title to her 1987 Nissan Maxima automobile. The agreement contains an arbitration clause requiring the parties to arbitrate "any and all disputes or disagreements between [them] arising out of this Agreement...." Shortly after entering into the agreement, Porter defaulted on the loan. As a result, Money Tree repossessed her vehicle and sold it. Thereafter, Money Tree claimed that Porter owed a deficiency on the loan of $535.67. Upon Porter's failure to pay the deficiency, Money Tree sent her a letter demanding payment and threatening to turn the matter over to a collection agency.

Money Tree's attempted collection of the deficiency prompted Porter to file the complaint in this case. In her complaint, Porter alleges that Money Tree's efforts with respect to the deficiency are prohibited by T.C.A. § 45-15-115(2)[2], a provision of the Tennessee Title Pledge Act arguably prohibiting a title pledge lender from pursuing a deficiency against a pledgor following the sale of the pledgor's "personal property." Porter argues that Money Tree's attempts to collect the deficiency amount to violations of the Tennessee Consumer Protection Act ("TCPA"), which (1) prohibits one from representing that a consumer transaction confers a right or remedy that is prohibited by law, and (2) prohibits an act that is deceptive to a consumer. *See* T.C.A. §§ 47-18-104 (b) (12), (27) (2001). Porter also alleges that Money Tree violated the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* (1998), by failing to provide her with a statement of the terms and extra

---

[2]T.C.A. § 45-15-115 (2000) provides the following:

A title pledge lender shall not:

\* \* \*

(2) Make any agreement giving the title pledge lender any recourse against the pledgor other than the title pledge lender's right to take possession of the titled personal property and certificate of title upon the pledgor's default or failure to redeem, and to sell or otherwise dispose of the titled personal property in accordance with the provisions of this chapter....

financing charges associated with renewal periods in the agreement, as required by T.C.A § 45-15-113(a)[3].

Pursuant to the agreement's arbitration clause, Money Tree filed a motion to compel Porter to arbitrate her claims. The trial court denied the motion, concluding that Porter's claims do not relate to the contract, and hence Porter is not required to arbitrate them. This appeal followed. On appeal, Money Tree argues that the trial court erred when it refused to compel arbitration.

## II.

Our standard of review is *de novo* upon the record, accompanied by a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). Review of questions of law is *de novo*, with no presumption of correctness. ***Campbell v. Florida Steel Corp.,*** 919 S.W.2d 26, 35 (Tenn. 1996).

## III.

The arbitration clause in this case provides as follows:

> Any and all disputes or disagreements between parties *arising out of this Agreement* or any prior agreement between them (save and except the Lender's rights to enforce the Pledgor(s)' payment obligations, in the event of default, by judicial or other process) *shall be decided by arbitration* and in accordance with the procedural rules of the American Arbitration Association as presently published and existing. The parties agree to be bound by the decision of the arbitrator(s). The arbitration proceeding shall be a condition precedent to any other court proceeding and shall take place in Davidson County, Tennessee. Notwithstanding the applicability of any other provision of this Agreement the Federal Arbitration Act, 9 U.S.C. Section 1 ff [sic] shall control the construction, interpretation, application of this paragraph. Any issue as to whether this Agreement is subject to arbitration shall be determined by the arbitrator.

(Emphasis added).

---

[3]T.C.A. § 45-15-113(a)(2000) provides that "[t]itle pledge agreements and property pledge agreements made pursuant to this chapter shall not exceed thirty (30) days in length. However, such agreements may provide for renewals for additional thirty-day periods...."

According to the terms of the arbitration provision, the agreement is "control[led]" by the Federal Arbitration Act ("the FAA"). Section 2 of the FAA, 9 U.S.C. §2 (1999), provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"Section 2 of the FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements...." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The basic purpose of the FAA is to ensure enforcement of arbitration agreements according to their terms. *Frizzell Constr. Co., v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999). Furthermore,

> as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.... To that end, the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.

*American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (citations and quotation marks omitted).

IV.

The issue we must decide on this appeal is whether Porter's TCPA and TILA claims are subject to the arbitration provision in the agreement. The court below found that those claims do not relate to the agreement, and, therefore, Porter is not required to arbitrate them.

Money Tree contends that the trial court erred when it refused to compel Porter to arbitrate her claims because, it argues, that both of Porter's claims arise out of the agreement. Money Tree argues that Porter's TCPA claim is based upon her allegation that Money Tree violated T.C.A. § 45-15-115(2) by attempting to collect a deficiency following the sale of her automobile. Because its ability to collect the deficiency is found in paragraph six of the agreement, Money Tree maintains that Porter's TCPA claim is necessarily based upon the language of the agreement. Furthermore, Money Tree argues that Porter's TILA claim also arises out of the agreement because she contends that the agreement fails to disclose the additional financing charges associated with renewal periods provided for in the agreement.

Porter argues that her TCPA and TILA claims do not arise out of the agreement, and are, therefore, not subject to arbitration. *See **Souder v. Health Partners, Inc.***, 997 S.W.2d 140, 144 (Tenn. Ct. App. 1998) (holding that matters outside the scope of the contract are not subject to the arbitration provision). In support of her argument that her TCPA claim is not subject to arbitration, Porter relies upon this Court's decision in ***Brown v. KareMor Int'l, Inc.***, C/A No. 01A01-9807-CH-00368, 1999 WL 221799 (Tenn. Ct. App. M.S., filed April 19, 1999), *perm. app. granted* January 18, 2000, in which this Court determined that the plaintiff there did not have to arbitrate her TCPA claim because it did not relate to the agreement. ***Id.*** at *2. In ***KareMor***, the plaintiff and the defendant entered into a distributorship agreement containing an arbitration clause which provided that "[a]ny controversy, dispute, or claim relating to this agreement between the parties shall be resolved by binding arbitration in Carson City, Nevada...." ***Id.*** Thereafter, the defendant made promises to the plaintiff regarding adjustments to the product if she would return it to the company. ***Id.*** at *1. The plaintiff returned the product, but the defendant failed to comply with the agreement. ***Id.*** As a result, the plaintiff filed suit alleging fraud in the inducement to enter into a distributorship and unfair and deceptive practices under the TCPA. ***Id.*** The defendant argued that the plaintiff's claims had to be arbitrated. ***Id.*** The trial court concluded that the plaintiff's claims of fraud in the inducement and violation of the TCPA did not relate to the agreement, therefore the plaintiff was not required to arbitrate those claims. ***Id.*** at 2. Porter relies upon this case to show that all TCPA claims are exempt from arbitration.

In the case of ***Pyburn v. Bill Heard Chevrolet***, C/A No. M2000-02322-COA-R3-CV, 2001 WL 487569 (Tenn. Ct. App. M.S., filed May 9, 2001), *perm. app. denied* November 19, 2001 (recommended for publication), we distinguished ***KareMor*** and rejected the argument that *all* TCPA claims are exempt from arbitration.[4] In ***Pyburn***, the plaintiff relied upon this Court's decision in ***KareMor*** to support his argument that his TCPA claim was not subject to arbitration. We rejected the plaintiff's argument in ***Pyburn***, noting that in ***KareMor***, we held that the plaintiff's TCPA claim was not subject to arbitration because it was outside the scope of the arbitration agreement. ***Pyburn,*** 2001 WL 487569 at *10. "In other words, the parties had not agreed to arbitrate that claim." ***Id.*** We also concluded in ***Pyburn*** that ***KareMor*** does not stand for the proposition that *no* TCPA claim could be arbitrated. ***Id.*** In ***Pyburn***, we found that the plaintiff's TCPA claim was "within the scope of what the parties agreed to arbitrate." ***Id.*** The parties agreed to arbitrate "all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing...." ***Id.*** We found that the plaintiff's claims "all center around the financing agreement and its terms" and, therefore, when the plaintiff entered into the agreement with the defendant, he agreed to arbitrate his TCPA claim. ***Id.***

---

[4]Other jurisdictions have concluded that consumer protection act claims are not exempt from arbitration. *See **Gergel v. High View Homes, LLC,*** 996 P.2d 233, 236-37 (Colo. Ct. App. 1999); ***Alexander v. Everhart***, 7 P.3d 1282, 1285 (Kan. Ct. App. 2000); ***Conseco Fin. Serv. Corp. v. Wilder***, 47 S.W.3d 335, 340 (Ky. Ct. App. 2001); ***Ahern v. Toll Bros., Inc.***, C/A No. 187917, 2001 WL 543421, at *3 (Va. Cir. Ct., filed February 16, 2001); ***Stein v. Geonerco, Inc.***, 17 P.3d 1266, 1270 (Wash. Ct. App. 2001).

Similarly, in the instant case, we find that Porter's TCPA and TILA claims center around the title pledge agreement and its terms, and, as a result, they fall within the disputes that she agreed to arbitrate. Porter's cause of action under the TCPA is based upon her allegation that the provision in the agreement which recites that "[i]f a deficiency is found after the sale of the automobile, Pledgor will pay Lender the difference of the sales price and the amount owed as of the first legal sale date," is prohibited by T.C.A. § 45-15-115(2). Porter argues that Money Tree's inclusion of the "illegal provision" in the agreement is a deceptive act in violation of the TCPA. *See* T.C.A. §§ 47-18-104(12), (27). Clearly, because Porter's claim is based upon an "illegal provision" in the agreement, it is a dispute arising out of the agreement, and thus falls squarely within the arbitration provision.

Furthermore, we find that Porter's TILA claim also arises out of the agreement. Porter claims that Money Tree violated T.C.A. § 45-15-113(a) by failing to include in the agreement a statement indicating the terms and additional financing charges related to the renewal periods. Porter contends that any attempt by Money Tree to assess charges against her in excess of the original finance charges agreed to in the initial 30-day contract, evidences Money Tree's failure to disclose additional financing charges. As a result, Porter argues that these charges are disguised finance charges under the TILA, and Money Tree is liable to Porter for violation of the TILA. These allegations are based upon an alleged deficiency *in the agreement*; hence, they "aris[e] out of" the agreement and are subject to arbitration.

Because we find that Porter's TCPA and TILA claims arise out of the title pledge agreement and therefore fall within the language of the arbitration provision, we hold that the trial court erred in failing to order the parties to arbitration.

The trial court found that Porter alleged three causes of action–violation of the TCPA, violation of the TILA, and a claim for punitive damages as a result of fraud and misrepresentation. The court stated that Porter's fraud and misrepresentation claims are tort claims not dependent upon the agreement, and like her other claims, are not subject to arbitration. Money Tree argues that Porter did not set forth specific factual allegations in support of her claims of fraud and misrepresentation. We agree. In her complaint, Porter simply sought punitive damages as a result of Money Tree's fraud and misrepresentation *allegedly involved in violations of the TCPA and TILA*; however, Porter did not allege separate causes of action for fraud and misrepresentation. We conclude that Porter's fraud and misrepresentation general allegations relate to her TCPA and TILA claims and are a part of that which is subject to the arbitration process.

In an attempt to avoid arbitration by having the entire contract set aside pursuant to the language of the FAA dealing with "revocation of [the] contract," Porter alleges, for the first time, on appeal that the entire agreement should be revoked because it is an unenforceable adhesion contract. As such, she argues that because the arbitration provision is part of the "unenforceable" agreement, the agreement to arbitrate is also invalid. Because Porter has not alleged facts in her complaint to support revocation of the contract, nor has she sought the remedy of rescission in her complaint, we will not notice this issue on appeal. *See* ***Irvin v. Binkley***, 577 S.W.2d 677, 679 (Tenn.

-6-

Ct. App. 1978) ("This Court can only consider such matters as were brought to the attention of the trial court and acted upon or [pretermitted] by the trial court.").

Porter argues before us – again for the first time – that this matter should not be arbitrated because of the potentially excessive fees associated with arbitration and the burdensome time and expense of traveling to Davidson County to arbitrate. Porter argues that we should find the arbitration provision is unconscionable because of the excessive fees and inconvenient forum. Again, because this issue is raised for the first time on this appeal, we will not address it.

V.

We hold that the trial court erred in refusing to require arbitration of Porter's claims. Accordingly, the judgment of the trial court is reversed. Costs on appeal are assessed to the appellee, Joy McVey Porter. This case is remanded to the trial court for the entry of an order submitting this matter to arbitration and suspending further court action pending receipt of the arbitrator's decision.

_____
CHARLES D. SUSANO, JR., JUDGE