648 S.E.2d 1

**R.E. HAMRICK, Jr., M.D., Plaintiff Below, Appellant,**

v.

**CHARLESTON AREA MEDICAL CENTER, INC., Defendant Below, Appellee.**

No. 33107.

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 24, 2007.

Decided: March 1, 2007.

Karen H. Miller, Esq., Mark S. Weiler, Esq., Richard W. Walters, Esq., Miller, Weiler, Walters & Elswick, Charleston, for Appellant.

James S. Crockett, Jr., Esq., Spilman, Thomas & Battle, Charleston, for Appellee.

STARCHER, J.

In this case we hold that meetings of a hospital's Medical Staff Executive Committee are not immune from the purview of the Open Hospital Proceedings Act, *W.Va.Code*, 16–5G–1 to –7 [1999].

## I.

### *Facts & Background*

In the instant case, the Circuit Court of Kanawha County concluded, in an order dated February 24, 2006, that only meetings of the Board of Trustees of the Charleston Area Medical Center, Inc. ("CAMC"), the appellee and defendant below, could fall within the purview of the Open Hospital Proceedings Act (the "Hospital Act"), *W.Va.Code*, 16–5G–1 to –7 [1999]. The Hospital Act generally provides that meetings covered by the Act are open to the public.

Based on this conclusion, the circuit court granted summary judgment for CAMC against a group of doctors, the plaintiffs below, who in March of 2005 had filed a complaint alleging that CAMC was illegally denying them the right to attend meetings of CAMC's Medical Staff Executive Committee ("MSEC"). The plaintiffs asserted in their complaint that the meetings of the MSEC in question fell within the purview of the Hospital Act.

Both sides filed cross-motions for summary judgment in the circuit court, and stipulated that the record before the circuit court permitted the court to decide the case for one side or the other. After the circuit court ruled for CAMC, the appellant Dr. Hamrick appealed the circuit court's ruling. The following-recited facts, taken from the briefs and based on the record established by the cross-motions for summary judgment, appear to be undisputed.

CAMC has a Board of Trustees that bears the ultimate legal responsibility for CAMC and its actions. The Board of Trustees' meetings are held in compliance with the Hospital Act's open meetings requirements.

CAMC also has a "Medical Staff," comprised of more than 600 doctors who are divided into fourteen departments. The Medical Staff's governing documents are approved by the Board of Trustees. The Medical Staff is responsible for the quality of patient care at CAMC. CAMC's bylaws provide for the creation of a Medical Staff Executive Committee ("MSEC"). The MSEC is not a committee of CAMC's Board of Trustees; it is a distinct and separate body.

The MSEC exercises primary authority over activities related to the functions of the Medical Staff, and over performance improvement activities regarding the professional services provided by individuals with hospital clinical privileges. The MSEC makes reports and recommendations to the Board of Trustees regarding the structure of the Medical Staff, the appointment and termination of appointments to the Medical Staff, and medical care improvement initiatives. The MSEC also consults with CAMC's administration regarding the quality of medical care; acts on reports and recommendations of the Medical Staff committees and departments; reviews its own governing documents; and performs other duties. The Board of Trustees reserves the authority to appoint individuals to the Medical Staff, to grant clinical privileges, and to withdraw such appointment and privileges.

The voting members of the MSEC are the elected officers of the Medical Staff, the Immediate Past Chief of Staff, the Chief of each Department of the Medical Staff, and the Associate Vice–President of West Virginia University Health Sciences Center—Charleston Division. The MSEC conducts its meetings only when a quorum is present. Notice of MSEC meetings is posted, meeting minutes are prepared, and Robert's Rules of Order are followed. The MSEC on occasion goes into "executive session."

CAMC's Board of Trustees has seventeen voting members, and the MSEC has nineteen voting members. Two persons are voting

members of both the MSEC and the Board of Trustees: the current Chief of Staff and the Immediate Past Chief of Staff. These two doctors sit on the CAMC Board of Trustees *ex officio*. Apparently MSEC meetings are at times attended by other persons associated with CAMC's administration who are not voting members of the MSEC.

The MSEC's meetings are officially closed to the public and to members of the Medical Staff—unless they are members of the MSEC. The appellant asserts, without dispute, that on some occasions doctors like the appellant who practice at CAMC but who are not members of the MSEC have requested and been denied an opportunity to attend an MSEC meeting.

The appellant also contends in his brief, and it is not disputed by the appellee, that MSEC recommendations on a wide range of issues are routinely approved by the CAMC Board of Trustees without change and with little or no discussion; and that all or almost all of the substantive discussion, debate, deliberation, and decision-making regarding these issues takes place at the meetings of the MSEC, and not at Board of Trustees meetings. The record supports these contentions; we list some examples in a footnote.[1]

As discussed further at Part III, *infra*, the Hospital Act provides that meetings of a "governing body" of a nonprofit hospital are open to the public, subject to a number of exceptions not relevant to the instant appeal. The Hospital Act at *W.Va.Code*, 16–5G–2(3) [1999] defines a "governing body" as "the board of directors or other group of persons having the authority to make decisions for or recommendations on policy or administration to a hospital ...".

The appellant contended in the circuit court that the holding of closed meetings by the MSEC—meetings where facts, opinions, and alternative approaches are presented and discussed, and where significant choices are effectively made regarding important hospital-related issues—is contrary to the Hospital Act.

The circuit court, while acknowledging that the statute is facially unclear on this issue, concluded that as a matter of law there could only be one single "governing body" for a hospital; and that in CAMC's case, that single governing body was CAMC's "top" or ultimate decision-making body, the Board of Trustees. This conclusion was the sole basis for the circuit court's grant of summary judgment for CAMC—the decision that we review in the instant appeal.

1. In August of 2004, CAMC's Chief of Staff presented to the Board of Trustees the following recommendations of the MSEC: (1) Hospital Plan for the Provision of Patient Care, and (2) Flu Vaccines & Immunization Protocol. The Board of Trustees adopted these recommendations without making any changes. In September of 2004, the Chief of Staff, on behalf of the MSEC, presented to the Board of Trustees changes to the Medical Staff Rules and Regulations and the Medical Staff Governing Documents. This included changes to the Medical Staff Organization and Functions Manual, the Medical Staff Bylaws, and the Credentials Policy. These changes were designed to bring CAMC into compliance with current standards of the Joint Commission on Accreditation of Health Care Organizations. The Board of Trustees adopted the recommendations of the MSEC without making any changes. In October of 2004, the Board of Trustees approved a recommendation from the MSEC amending the CAMC Medical Staff Bylaws. The Board of Trustees also adopted recommendations concerning appointment, reappointment, clinical privileges, and staff status changes. The Board adopted the recommendations without change. In Novem-

ber of 2004, the MSEC recommended Chiefs and Vice Chiefs for each medical department and these recommendations were adopted by the Board of Trustees without change. In January of 2005, the MSEC recommended department sections heads and amendments to the CAMC Organization and Functions Manual. The Board of Trustees adopted the recommendations without change. In March of 2005, the Board of Trustees adopted a variety of recommendations concerning amendments to the CAMC Organization and Functions Manual, Informed Consent Form, Reconciliation of Home Medications Form, Arrhythmia Protocol, and Reflex Testing. Again the CAMC Board adopted the recommendations without change or discussion. In April of 2005, the Board of Trustees adopted, without change or discussion, recommendations from the MSEC concerning the care of unassigned medical patients and recommendations concerning the total formulary review for 2005. In July of 2005, the Board of Trustees adopted all of the recommendations made by the MSEC. The same occurred in August of 2005, when the Board of Trustees adopted the MSEC's recommendation that thoracic surgeons were to be exempted from vascular call coverage.

## II.

### Standard of Review

■ We review a circuit court's grant of summary judgment *de novo*. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.

### Discussion

In 1982, the West Virginia Legislature first enacted the Hospital Act—in the form of two statutory sections, *W.Va.Code*, 16–5G–1 and –2.

*W.Va.Code* 16–5G–1 [1982], which is unchanged since its enactment, reads as follows:

The legislature hereby finds and declares that hospitals owned or operated by nonprofit corporations, nonprofit associations or local governmental units are relied on by the citizens of this State for services essential to their health and well-being. The legislature further finds and declares that public funds from various sources and by various means contribute significantly to the revenues and operations of such institutions. Therefore, it is in the best interest of the people of this State for *all* proceedings of the boards of directors *or other governing bodies of such hospitals* to be conducted in an open and public manner so that the people can remain informed of the *decisions and decision making processes* affecting the health services on which they so vitally depend and which they help support through tax exemptions, public funding and other means.

(Emphasis added.)

The second of the two sections of the Hospital Act, *W.Va.Code*, 16–5G–2 [1982], as originally enacted in 1982, read (in its entirety) as follows:

2. Dr. Caveny, who was a student at the West Virginia University College of Law in 1999 when this article was written, is a dual medical/law graduate of West Virginia University and holds an M.P.H. from the University of North Carolina. His article surveys the full range of 1999 Legislative changes to the Hospital Act, including the adding of new sections at *W.Va.Code*, 16–5G–3

Every board of directors *or other governing body* of any hospital owned or operated by a nonprofit corporation, non-profit association or local governmental unit shall be open to the public *in the same manner and to the same extent as required of public bodies in article nine-a, chapter six of this code.* [*W.Va.Code*, 6–9A–1 *et seq.*].

(Emphasis added.)

*W.Va.Code*, 6–9A–1 *et seq.*, referenced in the above-quoted text of *W.Va.Code*, 16–5G–2 [1982], is the Open *Governmental* Proceedings Act ("the Open Meetings Act").

What the Hospital Act did in 1982, therefore, was to extend to non-profit hospitals the same open meetings requirements that were applied to public agencies and public bodies under the then-existing provisions of the Open Meetings Act.

In 1982, as may be seen in the foregoing-quoted text, the Hospital Act did not have its own separate definition of the term "governing body." However, in 1982, the Open Meetings Act, the substantive provisions of which were incorporated by reference in the Hospital Act, defined the term "governing body" (for public agencies and public bodies) as follows:

"Governing body" means the members of any public body *having the authority to make decisions for or recommendations to a public body on policy or administration* . . .

*W.Va.Code*, 6–9A–3 [1978] (emphasis added).

In 1999, the Legislature made substantial changes to both the Hospital Act and the Open Meetings Act. The 1999 amendments to both Acts are discussed in an article by Dr. Brian T. Caveny, "More Sunshine in the Mountain State: The 1999 Amendments to the Open Governmental Proceedings Act and the Open Hospital Proceedings Act," 102 *W.Va.L.Rev.* 131 (Fall 1999).[2]

to –7. These new sections, while not relevant to the issue in the instant appeal, set forth with specificity the open meetings requirements of the Hospital Act—instead of simply referencing the provisions of the Open Meetings Act, *W.Va.Code*, 6–9A–1, *et seq*, as the pre–1999 version of the Hospital Act did.

Among these changes, the 1999 Legislature gave the Hospital Act its own definitional section, which *inter alia* provides that a

> "[g]overning body" means the *board of directors or other group of persons having the authority to make decisions for or recommendations on policy or administration to a hospital* owned or operated by a nonprofit corporation, nonprofit association or local governmental unit, the membership of which governing body consists of two or more members;

*W.Va.Code,* 16–5G–2(3) [1999] (emphasis added).

It may be seen, therefore, that the definition of "governing body" that was added to the Hospital Act in 1999 closely tracks the definition used in the 1982 Open Meetings Act—with the word "hospital" substituted for the words "public body." [3]

It may also be seen that the statutory language in the Hospital Act's 1999 definition of "governing body" does not clearly establish that a hospital's board of directors is the single body associated with a hospital to which the Act may apply.

The statute does not say that the Hospital Act only applies to a "[single] board of directors or [if there is no board of directors,] other [similar single] group of persons having the authority to make decisions for [ ] a hospital"—which is the reading that CAMC would have us adopt.

To the contrary, the statute may be quite reasonably read to include the possibility that another group, in addition to a hospital's board of directors, may function as a "governing body" for purposes of the purview of the Hospital Act.

As previously noted, the circuit court concluded that despite the lack of clarity in the statutory language, CAMC's Board of Trustees is as a matter of law the only body to

which the Hospital Act may apply. However, a number of considerations cast doubt on the circuit court's conclusion that there may only be one single governing body connected with a hospital to which the Act may apply.

We first turn to the legislative policy expressed in the Hospital Act itself. In his treatise "Administrative Law in West Virginia," Michie's, 1982, Professor Alfred S. Neely discussed the proper role and import of the legislatively-stated public policy language in the Open Meetings Act, at *W.Va.Code,* 16–5G–1.

Professor Neely stated: "If the language of a provision interpreting the Open Meetings Act is plainly inconsistent with the language of the [statute's] declaration [of public policy], the language of the specific provision should prevail. On the other hand, if the language of the statute is ambiguous and susceptible to more than one reasonable interpretation, a court should turn to the declaration of legislative policy for guidance. This should lead to an interpretation that is most consistent with the policy of openness." *Id.* at 574.

In Syllabus Point 4 of *McComas v. Board of Education,* 197 W.Va. 188, 475 S.E.2d 280 (1996), this Court endorsed Professor Neely's recommended approach of giving consideration and weight to the legislatively-expressed purpose that underlies open meetings legislation:

> In drawing the line between those conversations outside the requirements of the Open Governmental Proceedings Act, W.Va.Code, 6–9A–1, *et seq.,* and those meetings that are within it, a common sense approach is required; one that focuses on the question of *whether allowing a governing body to exclude the public from a particular meeting would under-*

---

**3.** The 1999 changes to the definitional section of the Open Government Act changed the term "public body" to "public agency;" this change does not seem to have made any substantive difference. The new definitional section in the 1999 amendments to the Hospital Act includes a provision at *W.Va.Code,* 16–5G–2(5) [1999] stating: " 'Meeting' means the convening of a governing body of a hospital for which a quorum is required in order to make a decision or to delib-

erate toward a decision on any matter: *Provided, That a medical staff conference is not a meeting . . .". Id.* (emphasis added). It appears that this provision, which modifies the definition of "meeting" and not of "governing body," may refer in the case of CAMC to a meeting of the entire Medical Staff, and not to regular meetings of the MSEC. The parties do not treat this statutory provision as dispositive of the issue in the instant appeal.

*mine the Act's fundamental purposes.* [emphasis added].[4]

The legislative declaration of public policy in the Hospital Act, *W.Va.Code*, 16–5G–1 [1999], quoted in full *supra*, states that

> it is in the best interest of the people of this State for *all* proceedings of the boards of directors *or* other governing bodies of such hospitals to be conducted in an open and public manner *so that the people can remain informed of the decisions and decision making processes affecting the health services on which they so vitally depend and which they help support ...*".

(Emphasis added.)

Thus, the stated purpose of the Hospital Act is to ensure that the public may observe in a meaningful fashion the decision-making processes of nonprofit hospitals. The resolution of any uncertainty about the Hospital Act's application in a given instance should be in accord with this principle. Dr. Caveny's article put it well: "... when in doubt ... take the advice of Justice Cleckley [in *McComas, supra*] to heart and err on the side of openness. For the good of all of its citizens, let the sun shine brighter in the Mountain State." Caveny, *supra*, at 175.

Applying the legislative purpose in the instant case, we see that the inclusion of an entity like the MSEC within the Hospital Act's purview is consistent with the Legislature's stated purpose in enacting the Act— "so that the people can remain informed of the decisions *and decision making processes* ..." of a hospital. (Emphasis added.) To permit public access only to CAMC Board of Trustees meetings, when the undisputed record indicates that many decisions that are thrashed out in the MSEC are ratified *pro forma* by the Board, would be contrary to the Hospital Act's legislatively-stated purpose.

On the general issue of whether an entity may have more than one "governing body" to which an open meetings law may apply, Professor Neely stated that the application of the term "governing body" could be guided by an "institutional and structural" approach, or by a "functional" approach. *Id.* at sec. 8.03, "Scope of the Act."

Professor Neely criticized the notion that an entity could have only one single, "top" governing body—because such an "institutional and structural" approach would make a nullity of the language in the Act including bodies that "make recommendations to a public body ...". *Id.* at 576, quoting *W.Va. Code*, 6–9A–2(3). "[U]nder the single governing body analysis, the possibility of the existence of ... auxiliary 'governing bodies' goes wholly unrecognized and, instead the anomaly arises of [bodies] making recommendations to themselves." *Id.* at 577. Professor Neely continued, "It seems unlikely that the Legislature intended this ...". *Id.* at 579.

Dr. Caveny's article, *see* n. 2 *supra*, similarly opines that the inclusion of "groups that make recommendations" within the definition of "governing body" "suggests that the Open Meetings Act covers a broad range of 'bodies.' " *Id.* at 166. Thus, the scholarly consensus with respect to West Virginia is that there may be more than one "governing body" associated with an entity to which an open meetings law may apply; and weighs against the conclusion that CAMC has only one single "governing body"—its Board of Trustees—to which the Hospital Act may apply.

As previously discussed, the original version of the Hospital Act simply incorporated the Open Meetings Act, which included *"groups that make recommendations ... on* policy or administration" within its definition of "governing bodies." *W.Va.Code*, 6–9A–3 [1978] (emphasis added). The 1999

---

**4.** In the context of the Open Meetings Act, *McComas* looked at the declaration of public policy set forth in the statute, and concluded that the "Legislature clearly intended [the Open Meetings Act] to apply to those assemblies *where discussions leading up to a decision take place.*" 197 W.Va. at 195, 475 S.E.2d at 287 (emphasis added). Current *W.Va.Code*, 6–9A–1 (1999), has been somewhat amended from the language in the statute at the time of the *McComas* case, but not in a fashion relevant to the instant appeal. Dr. Caveny's article states that this Court's decisions relating to the Open Meetings Act have endorsed a "common sense" approach and "suggest a trend toward an expectation of greater openness ...". *Id.* at 140.

amendments to the Hospital Act continued to specifically include groups "*that make recommendations* to a hospital on policy or administration ..." within the Act's new definition of "governing body." *W.Va.Code,* 16–5G–2(3) [1999] (emphasis added).

While it is clear that many (if not most or even all) of the MSEC's decisions may be technically in the form of "recommendations" to the CAMC Board of Trustees, it is also clear that the Hospital Act has from its inception included within its purview groups that make recommendations that are given an ultimate imprimatur of finality by some other body or entity associated with a hospital. This fact strongly argues in favor of finding that meetings of the MSEC may fall within the Hospital Act's purview.

Finally, looking at how this issue has been addressed in other jurisdictions, we find that a rigid, structural, "single governing body" approach to the application of open meeting laws has been rejected in a number of similar cases.

In *News–Press Publishing Co., Inc. v. Carlson,* 410 So.2d 546 (Fla.App. 2 Dist. 1982), the board of a public hospital delegated the preparation of the annual budget to an *ad hoc* committee composed of four hospital vice-presidents and the hospital's CEO. "[T]he board of directors of the hospital is the governing body of the hospital and is responsible for adopting the annual budget." *Id.,* 410 So.2d at 547. The Florida court said that where the hospital authorities had "delegate[d] de facto authority on their behalf in the formulation, preparation, and promulgation of plans in which foreseeable action will be taken ... those delegated that authority stand in the shoes of such public officials insofar as the application of the Government in Sunshine Law is concerned." *Id.*

The Florida court further stated that "[a] very complex budget ... was conceived during a several month period but approved by ceremonial acceptance of the board with very little discussion. One purpose of the Government in the Sunshine Law is to prevent at nonpublic meetings the crystallization of secret decisions to a point just short of ceremo-

nial acceptance." *Id.* at 548. *Cf. also Stegall v. Joint Township District Memorial Hospital,* 20 Ohio App.3d 100, 484 N.E.2d 1381 (1985) (where hospital trustees had overall decisional authority but a Board of Governors had authority to handle daily activities of the hospital, open meetings law applied to the Board of Governors).

In *Souder v. Health Partners, Inc.,* 997 S.W.2d 140 (Tenn.App.1998), the court found that a health care organization's Board of Trustees' ratification and confirmation of decisions made in meetings that were not held in accord with open meetings laws was "merely a perfunctory rubber stamp ...[,] a perfunctory crystallization ... a mere ratification of the previous actions ...". 997 S.W.2d at 151. The court held that the Board of Trustees' subsequent ratification of the decisions had no curative effect, even though the public had been given proper notice of the subject matter of the subsequent meeting of the Trustees. *Cf. also Red & Black Publishing Co. v. Board of Regents,* 262 Ga. 848, 427 S.E.2d 257 (1983) (student court was "governing body" that was delegated responsibility by Board of Regents).

The foregoing cases thus follow the common-sense, functional approach of *McComas, supra,* and apply that approach to conclude that more than one "governing body" may be associated with a hospital or other entity for the purpose of an open meetings law.

## IV.

### Conclusion

■ Based on the foregoing discussion, this Court holds that the application of the term "governing body" in the Open Hospital Proceedings Act, *W.Va.Code,* 16–5G–2(3) [1999], is not limited to a single, ultimate, or "top" decision-making body in a hospital's governance structure. Rather, the term must be given a flexible and common-sense functional application to accomplish the legislative purpose set forth in *W.Va.Code,* 16–5G–1 [1982] that *all* proceedings of the boards of directors *or* other governing bodies

of such hospitals be conducted in an open and public manner so that the people can remain informed of the decisions and decision making processes affecting the health services on which they so vitally depend and which they help support, subject to the exceptions contained in *W.Va.Code,* 16–5G–4 [1999]. (Emphasis added.)

As applied to the undisputed facts of the instant case, the foregoing holding requires that the Circuit Court of Kanawha County's summary judgment for CAMC, premised on the conclusion that CAMC may have only one "single governing body" for purposes of the Hospital Act, must be reversed.

■ Moreover, taking a common-sense, functional approach guided by the Legislative purpose, the record is undisputed that with respect to many issues, the deliberative and decision-making process at CAMC takes place at MSEC meetings. The MSEC at these meetings is therefore a "governing body" for purposes of the Hospital Act;[5] and an award of summary judgment for the appellant on the issue of the applicability of the Hospital Act to the meetings of the CAMC Medical Staff Executive Committee is appropriate; and this Court so directs.[6]

The circuit court's summary judgment order is reversed and the instant case is remanded for proceedings consistent with this opinion.

Reversed and Remanded.

---

**5.** CAMC points to the use of the term "governing body" in various national hospital regulations as exclusively referring to a hospital's "top" or ultimate decision-making body. These regulations, however, have nothing to do with open meetings law or its applicability.

**6.** We note, however, that the finding of the applicability of the Hospital Act to meetings of the MSEC does not negate or obviate the applicability of any specific exemptions and protections that are afforded by the Hospital Act to the MSEC for particular aspects of the conduct of its business. *See W.Va.Code,* 16–5G–4 [1999].