# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 12, 2013 Session

## JOSEPH H. JOHNSTON v. MARILYN SWING ET AL.

### Appeal from the Chancery Court for Davidson County
#### No. 081977-IV    Russell T. Perkins, Chancellor

### No. M2012-01760-COA-R3-CV - Filed July 26, 2013

The plaintiff, an attorney representing himself, filed this action against the Metropolitan Government of Nashville and Davidson County, the Metro Clerk in her official capacity, and the Director of the Metro Department of Parks and Recreation Services in his official capacity. He asserts a 42 U.S.C. § 1983 claim that arises from him being prohibited from speaking on behalf of his clients at two separate meetings of the Board of the Metro Department of Parks and Recreation, because he failed to give timely notice to the Board. He alleges the defendants deprived him of his rights under the Fourteenth Amendment to the United States Constitution and Article I, section 8 of the Tennessee constitution and seeks nominal damages for the alleged deprivation of his rights. He also seeks a declaratory judgment that the Parks' Board rule requiring fourteen days' notice to be heard at a Board meeting is invalid. We have determined, as the trial court did, that the plaintiff's claims related to the first Board meeting are time-barred. As for the claims related to the second Board meeting, we have determined that the plaintiff's rights were not violated because the plaintiff had actual notice of the Board policy requiring fourteen days' notice well in advance of the second meeting. Finally, we have determined the plaintiff is not entitled to a declaratory judgment because he failed to demonstrate that he is seeking to vindicate an existing right under presently existing facts. The trial court summarily dismissed the claims. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Joseph H. Johnston, Nashville, Tennessee, Pro Se.

Lora Barkenbus Fox and Emily Herring Lamb, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

**OPINION**

This action is derivative from a Property Improvement and Lease Agreement ("the Agreement") between the Metropolitan Government of Nashville and Davidson County ("Metro") and Belmont University ("Belmont"). The Agreement provides, *inter alia*, that Belmont will redevelop Rose Park, a twenty-three acre park located in the Edgehill neighborhood, into a stadium sportsplex for Belmont sporting events, and lease it from Metro for a term of forty years. An organization of Edgehill residents, as well as two members of the organization individually, filed a number of actions challenging the substance of the Agreement as well as the procedure by which it was adopted. These claims, known as the "Rose Park Cases," were consolidated into one appeal, *Walker v. Metropolitan Board of Parks and Recreation*, No. M2007-01701-COA-R3-CV, 2009 WL 5178435 (Tenn. Ct. App. Dec. 30, 2009) (perm. app. denied June 30, 2010). This Court upheld the Agreement and found no irregularities with the procedures the Board used to adopt it. *See id.* at *23.

The claims currently before this Court arise from the same set of undisputed facts as the claims adjudicated in the Rose Park Cases. The plaintiff in this case, attorney Joseph Johnston, represented the two individual Edgehill residents in the Rose Park Cases. *See generally Walker* at *21-23. Mr. Johnston is no longer representing his former clients; in this action he represents his own interests and claims his personal rights to due process were violated when he was prohibited from speaking on behalf of his now former clients during two separate meetings of the Board of the Metro Department of Parks and Recreation ("the Board") on May 1, and September 6, 2007, respectively.[1] Mr. Johnston further claims that the policy cited by the Board as the reason for which he was prohibited from speaking is invalid because the policy was not on file with the Metro Clerk, a requirement set forth in Section 11.107 of the Metro Charter.[2]

The Board Policy at issue, Policy No. 1000.6(4), required that any individual or group "desiring to petition the Board for some specific action," provide the Board with notice so

___

[1]Unlike in the original Rose Park Cases, Mr. Johnston does not challenge the validity of the Agreement in these proceedings.

[2]Section 11.107 provides:

By-laws, rules and regulations to be filed with metropolitan clerk.

    Each board or commission may make such by-laws, rules and regulations, not inconsistent with law, as it deems appropriate for the conduct of its business, copies of which shall be filed with the metropolitan clerk and with the secretary of the board or commission.

that the person or group can be included on the agenda at the next Board meeting. The version of Policy No. 1000.6(4) on file with the Metro Clerk in May and September of 2007 required only five days' notice. However, prior to May 2007, the Board amended Policy No. 1000.6(4), to require fourteen days' notice. The amended version was posted on the Department of Parks and Recreation's Website, and printed copies were available at the Parks Department Office, however it was not on file with the Metro Clerk, and despite the 2007 amendment, the prior version requiring only five days' notice remained on file with the Metro Clerk.

Mr. Johnston provided the Board with more than five days' notice but less than fourteen days' notice that he intended to speak on behalf of his clients at the May 2007 meeting. When he asked to address the Board at the May 2007 meeting, he was informed that his request was untimely because it was not filed with the Board Secretary at least fourteen days prior to the meeting. Although Mr. Johnston was allowed to speak briefly on behalf of his clients at the May meeting, his comments were later stricken from the Board's record. Other opponents of the Agreement who had provided timely notice – including the neighborhood organization to which Mr. Johnston's clients belonged – were permitted to speak in opposition to the Agreement during the May meeting and their remarks are part of the record of that meeting.

The next meeting of the Board was timely scheduled for and held on September 6, 2007. Although Mr. Johnston had actual notice that Policy No. 1000.6(4) had been amended to require fourteen days notice, Mr. Johnston intentionally gave less than fourteen days' notice that he wished to speak on behalf of his clients at the September meeting. When Mr. Johnston attempted to speak, he was informed he was out of order; when Mr. Johnston refused to stop speaking, the chairman of the meeting instructed the Park Police to escort Mr. Johnston out of the meeting.

On September 8, 2008, Mr. Johnston commenced this action against Metro, Metro Clerk, Marilyn Swing in her official capacity, and the Director of the Department of Parks and Recreation Services, Roy Wilson in his official capacity (collectively, "Defendants"). Mr. Johnston alleged, *inter alia*, that Defendants deprived him of his due process rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Tennessee constitution, for which he claimed to be entitled to relief under 42 U.S.C. § 1983. He also sought a declaratory judgment pursuant to the Tennessee Declaratory Judgment Act, Tenn. Code Ann. §§ 29-14–101 through -113, that "any new rule, regulation, or policy promulgated by Metropolitan Government's boards, commissions, or departments not . . . filed with the Metropolitan Clerk in accordance with the mandatory language of Section 11.107 of the Metro Charter is invalid and not in effect until properly filed with the Metropolitan Clerk."

Pursuant to an Order entered on March 3, 2009, the trial court stayed the proceedings in this action pending the outcome of the Rose Park Cases, specifically the *Walker* case. After this court issued its ruling in *Walker* on December 30, 2009, and the Tennessee Supreme Court denied certiorari on June 30, 2010, the trial court lifted the stay and the parties filed a joint stipulation of facts and cross motions for summary judgment.

On March 13, 2012, the trial court entered an Order and Memorandum granting Defendants' motion for summary judgment. The court found Mr. Johnston's § 1983 claims arising from the May 1, 2007 Board meeting were time barred by the one-year statute of limitations. As for the § 1983 claims arising from the September 6, 2007 meeting, the trial court found Mr. Johnston "suffered no cognizable harm," given that he had notice of the fourteen-day deadline well in advance, and given that he "was not injured, arrested, or detained," but was rather simply "escorted from the meeting room." The trial court also concluded that "[t]he two-week notice policy was adopted through an acceptable procedure and published through methods designed to give notice to the public."

Mr. Johnston filed a Motion to Alter or Amend on April 11, 2012, seeking to amend the March 13, 2012 Order and Memorandum "on the issue of whether the provisions of the Metro Charter Section 11.107 are mandatory or directory, and if mandatory, whether lack of compliance renders Defendants' actions voidable and unconstitutional." The trial court denied the motion, reasoning that the filing requirement in Metro Charter Section 11.107 is for record-keeping purposes only, and that Mr. Johnston was on actual notice of the amended fourteen-day policy. The trial court further concluded that "the issue of . . . whether Board by-laws must be filed in order to become effective has no effect on Mr. Johnston's claims that his rights were violated."

**ANALYSIS**

This appeal arises from the grant of summary judgment. Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001).

Mr. Johnston does not appeal the trial court's finding that his § 1983 claims related to the May 1, 2007 incident are barred by the one-year statute of limitations for civil rights actions filed pursuant to federal statutes. *See* Tenn. Code Ann. § 28-3-104(a)(3). As for his § 1983 claims arising from the September 2007 incident, Mr. Johnston reiterates the same arguments he made at the trial court; namely, that the amended version of Policy No.

-4-

1000.6(4) was invalid because it was not on file with the Metro Clerk; and that by enforcing it, the Board violated his personal due process rights secured by the Fourteenth Amendment to the United States Constitution and Article I, section 8 of the Tennessee constitution. He further contends the trial court misconstrued the Metro Charter and erred in not issuing a declaratory judgment that any rule, regulation, or policy promulgated by a Metro board, commission, or department that is not on file with the Metro Clerk, is invalid.

## I. 42 U.S.C. § 1983 Claims

A party seeking relief under § 1983 must establish two essential elements. First, they must establish that the challenged conduct was committed by a person acting under color of state law. 42 U.S.C. § 1983. Second, they must establish that they "personally suffered an actual injury to a federally protected right." *King v. Betts*, 354 S.W.3d 691, 702 (Tenn. 2011) (citations omitted). It is undisputed that the Board Chair, defendant Wilson, was acting under color of law when he ruled that Mr. Johnston was out of order when he attempted to address the Board and when he instructed Park Police to escort Mr. Johnston out of the September 6, 2007 Board meeting. Accordingly, the dispositive issue is whether Mr. Johnston "personally suffered an actual injury to a federally protected right." *King*, 354 S.W.3d at 702 (citations omitted). We have determined he has not.

### A. Claims pertaining to Article I, section 8 of the Tennessee constitution

One of Mr. Johnston's 42 U.S.C. § 1983 claim alleges a deprivation of his rights under Article I, section 8 of the Tennessee constitution. While 42 U.S.C. § 1983 expressly provides a remedy for the violation of *federally protected rights,* numerous courts have held that a claimed violation of a state constitution is not cognizable under § 1983. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005). Therefore, Mr. Johnston's § 1983 claim for the alleged deprivation of his rights under Article I, section 8 of the Tennessee constitution is without merit.

### B. Claims pertaining to the Fourteenth Amendment

"In order to state a cause of action for a due process violation under the Fourteenth Amendment, deprivation of a liberty or property interest must . . . be alleged." *City of Cookeville ex rel. Cookeville Reg'l Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 906 (Tenn. 2004). "The touchstone of due process is protection of the individual against arbitrary action of government." *Woff v. McDonnell*, 418 U.S. 539, 558 (1974).

Mr. Johnston alleges that he had a liberty or property right to speak at the September

6, 2007 Parks Board meeting. Mr. Johnston made similar arguments on behalf of his clients in the Rose Park Cases, *see Walker*, 2009 WL 5178435, at *21 ("The complaint is that Petitioners' attorney was deprived of the opportunity to express his clients' views at two meetings of the Parks Board"), and this court found that he "failed to establish a 'right' to speak at meetings of governmental entities at all."[3] *Id.* Our determination was based on the well-settled rule of law that, "'[n]either the First Amendment nor Article I, Section 19 of the Tennessee Constitution is subject to analysis in terms of absolutes; all basic rights of free speech are subject to reasonable regulation.'" *Id.* (quoting *State v. Scott*, 678 S.W.3d 50, 52 (Tenn. 1984)). The fact that Mr. Johnston is now seeking damages for alleged deprivation of his own personal rights does not change our analysis. Moreover, we find Mr. Johnston's claim that he was deprived of his right to due process somewhat disingenuous because Mr. Johnston had actual knowledge of the fourteen-day notice requirement well in advance of the September meeting and he willfully chose to ignore it in order to assert the claim at issue.

The Parks Board has the authority to set reasonable deadlines for the public to provide notice to speak at Parks Board meetings[4] and Mr. Johnston was fully aware of the fourteen-day notice requirement well in advance of the September 6, 2007 meeting. Under these circumstances, it cannot be said that the Board's failure to file the amended policy with the Metro Clerk was the cause for Mr. Johnston being prohibited from speaking on behalf of his clients at the September 2007 Board meeting or a deprivation of his right to due process.

Accordingly, we affirm the summary dismissal of Mr. Johnston's § 1983 claims.

## II. Declaratory Judgment

---

[3]Even with the proper notice, Policy No. 1000.6(4) does not guarantee members of the public the right to speak at Board meetings. Pursuant to its own policies as well as the Open Meetings Act, Tenn. Code Ann. §§ 8-44-101 through -111, Board meetings must be open to the public, but every citizen is not guaranteed the right to participate in the meeting. *See* Parks Board Policy No. 1000.6(3), "All regulation and special meetings of the Board will be open to the public." *See also Sounder v. Health Partners Inc.*, 997 S.W.2d 140, 150 (Tenn. Ct. App. 1998) ("While the [Open Meetings Act] requires all meetings of [state and local governmental boards and agencies] be open to the public, it does not guarantee all citizens the right to participate in the meetings."). Furthermore, while the Parks Board has the duty to make recommendations to the Metro Council regarding "the acquisition or disposition of land," it is not required to seek input from the public when determining which recommendations to make. *See* Parks Board Policy No. 1000.2(5) ("In the acquiring and disposition of land, the Board shall cooperate closely with the Planning Commission, whose recommendations shall be sought and carefully considered by the Board.").

[4]Parks Board Policy No. 1000.2(1) provides, "[t]he Board shall supervise, control and operate the Parks and Recreation Department." Policy No. 1000.2(2) further provides, "[i]t shall formulate the policies to be followed in the administration of the Parks and Recreation Department, and shall promulgate such rules and regulations as may be appropriate with respect to the administration of its policies."

Mr. Johnston also seeks a declaratory judgment that Section 11.107 of the Metro Charter[5] requires Metro departments, boards, and commissions to file their by-laws, policies, and rules with the Metro Clerk, and that any by-law, policy, or rule not properly filed with the Metro Clerk is "ineffective," or unenforceable. He contends the trial court erred in construing Section 11.107 of the Metro Charter as serving a record-keeping function only, and as allowing municipal governing bodies "to take the substantive action of making such by-laws as they deem appropriate." He contends the trial court committed reversible error in finding that the "by-laws become effective once adopted by the Boards."

Declaratory judgment actions are governed by Tennessee Code Annotated §§ 29-14-101 through -113. Tennessee Code Annotated § 29-14-103 provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or other franchise and obtain a declaration of rights, status or other legal relations thereunder.

The purpose of a declaratory judgment action is to resolve a dispute, afford relief from uncertainty with respect to rights, status, and other legal relations. *Snow v. Pearman*, 436 S.W.2d 861, 863 (Tenn. 1968); Tenn. Code Ann. § 29-14-103. "Although a plaintiff in a declaratory judgment action need not show a present injury, an actual 'case' or 'controversy' is still required." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 837-38 (Tenn. 2008) (quoting *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95 (1993) (stating that "a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy")). This is because courts "may not render advisory opinions based on hypothetical facts." *Colonial Pipeline*, 263 S.W.3d at 383. "A bona fide disagreement must exist; that is, some real interest must be in dispute." *Colonial Pipeline*, 263 S.W.3d at 383 (citing *Goetz v. Smith*, 278 S.W. 417, 418 (1925)). Put another way, a plaintiff seeking a declaratory judgment "must allege facts which show he has a real, as contrasted with a theoretical, interest in the question to be decided and that he is seeking to vindicate an existing right under presently existing facts." *Burkett v. Ashley*, 535 S.W.2d 332, 333 (Tenn. 1976).

We have determined Mr. Johnston has failed to establish the existence of an actual

---

[5]For the text of Section 11.107, see *supra*, note 2.

case or controversy or that he has a real interest in the question to be decided. As a practical matter, this Court already rejected all of the legal challenges to the Agreement, filed by Mr. Johnston and others, more than three and a half years ago. *See Walker*, 2009 WL 5178435, at \*11, 15, 17, 19, 21, and 23. Mr. Johnston openly acknowledges that he never had a personal stake in the Rose Park controversy. Moreover, as set forth above in the discussion of his 42 U.S.C. § 1983 claims, Mr. Johnston has also failed to establish that he is "seeking to vindicate an existing right," much less an existing right "under presently existing facts." *See Burkett*, 535 S.W.2d at 333.

We therefore affirm the trial court's summary dismissal of Mr. Johnston's declaratory judgment action.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the plaintiff, Joseph H. Johnston.

_____
FRANK G. CLEMENT, JR., JUDGE